IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DEBRA CHAMBERS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | |
| NORTHVIEW VILLAGE, INC. | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |
| | ) | |
| Serve: | ) | |
| Registered Agent: | ) | |
| Mark S. Rubin | ) | |
| 231 S. Bemiston, Suite 111 | ) | |
| Clayton, MO   63105 | ) | |

## COMPLAINT

COMES NOW Plaintiff Debra Chambers and for her Complaint of employment discrimination on the basis of her sex, female, and of retaliation under Title VII of the Civil Rights Act of 1964 (Title VII), as amended, states as follows:

## PARTIES

1. Plaintiff Debra Chambers is a female resident of the State of Missouri who, until her termination of employment on October 21, 2015, was employed by Defendant Northview Village in St. Louis, Missouri.

2. Defendant Northview Village, Inc. (Hereinafter "Northview") is a domestic corporation which, at all relevant times was doing business in the State of Missouri, and employed more than 15 employees for at least 20 workweeks at the facility at which Plaintiff worked.

1

## JURISDICTION AND VENUE

3. Jurisdiction of this court is founded upon 28 U.S.C. §1331.

4. Venue is proper under 28 U.S.C. §1391(b) because Plaintiff was employed by the Defendant in the Eastern District of Missouri at all relevant times.

5. Plaintiff has satisfied the administrative prerequisites to suit under Title VII. On or about May 3, 2016, Plaintiff filed a timely charge of discrimination with the Equal Employment Opportunity Commission (EEOC). On June 19, 2017, the EEOC issued to Plaintiff a Notice of Right to Sue, and this lawsuit is filed within ninety days of its issuance.

## ALLEGATIONS

6. Northview hired Plaintiff as a housekeeper in approximately February 2015. At all relevant times, Plaintiff met Northview's legitimate performance expectations.

7. Carvaughn Guthrie was the Director of Housekeeping at Northview at all relevant times. Mr. Guthrie supervised Plaintiff throughout her employment as her direct supervisor.

8. Very soon after her hire, Mr. Guthrie began sexually harassing Plaintiff. He made persistent rude, vulgar, sexually inappropriate, and sexually explicit comments about and to Plaintiff. He frequently talked about her "fat ass" and how he liked how "big" it was. He frequently commented on her "sexy" legs. He told Plaintiff, "I like the way you are built up." Plaintiff asked Mr. Guthrie to stop. He did not.

9. Mr. Guthrie often talked about the sexual things he wanted to do to Plaintiff. He told Plaintiff, "I can satisfy you." He said he wanted to "suck" her, told her he "could suck that real good for you," "I'll suck your pussy," and asked "how can I suck your pussy?" If she asked if something was wrong, Mr. Guthrie would respond, "I didn't sleep with you last night." Plaintiff flatly refused these unwelcome advances. He continued to make them.

10. Mr. Guthrie frequently leered at Plaintiff, staring at her genitals or her buttocks. When Plaintiff caught him leering, she put her hands in front of her genitals or buttocks, so as to block his view. Sometimes while leering at her, Mr. Guthrie would grab his penis while commenting how much he liked her "pussy" or her buttocks. On other occasions, he would lick his lips while grabbing his penis or making sexual comments to her. Plaintiff asked Mr. Guthrie to stop. He did not.

11. In approximately June 2015, Mr. Guthrie gave Plaintiff a wet kiss on her forehead. Plaintiff immediately left the area, so he could not touch her inappropriately again.

12. In approximately September 2015, Mr. Guthrie grabbed Plaintiff by the leg and began caressing her as he commented that her big, pretty legs were "sexy" and that he wanted to "lick all over her" and to "suck the shit out of her pussy." Plaintiff moved out of his grasp as quickly as she could, telling him to stop. In retaliation to her rebuff, Mr. Guthrie suspended Plaintiff for multiple unpaid days.

13. Plaintiff did not welcome Mr. Guthrie's sexually harassing behavior, which she communicated to him. In response to his harassment, she told him: "stop," "quit," "stop being disrespectful to me," "leave me alone," and "don't talk to me like that." Mr. Guthrie did not heed her requests and continued to sexually harass Plaintiff. He told her at least once: "Better don't cross me any. I'll fire you. I run this place."

14. In approximately late summer or early fall, Plaintiff requested a transfer to a different department. Northview denied her request. Just before learning that her transfer request was denied, Plaintiff saw Mr. Guthrie talking to the head of that department.

15. By approximately July 2015, Mr. Guthrie had begun retaliating against Plaintiff for refusing his advances by cutting her hours. At the beginning of her employment, Plaintiff

3

worked approximately 35 – 40 hours a week.  In July and August 2015, Mr. Guthrie scheduled her approximately 16.75 hours a week, about 20 fewer hours each week.  In September 2015, Plaintiff applied for and received unemployment benefits because of the low amount of work hours Mr. Guthrie gave her.

16. Mr. Guthrie also retaliated against Plaintiff by changing her schedule without telling her.  Mr. Guthrie would post the weekly schedule.  Then, Plaintiff would report to work, only to find that she had been removed from the schedule without being notified of the change.  Plaintiff would also be added to the schedule after it was posted.  Again, she would not be notified of the schedule change.

17. In approximately October 2015, Plaintiff reported to a Service Employees International Union representative that Mr. Guthrie was sexually harassing her and retaliating against her.  The representative arranged a meeting on or about October 13, 2015 for Plaintiff to report the harassment and retaliation to Judy Deering, Northview's administrator.   Plaintiff described, in detail, to Ms. Deering how Mr. Guthrie had sexually harassed her and retaliated against her.  After hearing these details, Ms. Deering told Plaintiff Mr. Guthrie's behavior was not sexual harassment because "You would have had to leave the building with him for it to be sexual harassment." Ms. Deering then said, "I'd hate to see him lose his job."

18. Ms. Deering then told Plaintiff that she could write a letter for Mr. Guthrie's personnel file.   In her letter, Plaintiff reported that Mr. Guthrie says "perverted" things to her.  For instance, "how big my butt is," "how big and sexy my legs are," and "how he would like to kiss me all over etc."  "He is very very unprofessional and disrespectful…"

19. After receiving Plaintiff's report and letter, Ms. Deering ordered Plaintiff to return to work, requiring her to interact with Mr. Guthrie the rest of her shift.  Later that day, Mr.

Guthrie shook his keys at Plaintiff in a menacing manner.  At a different time after her report that day, Mr. Guthrie and Ms. Deering burst out laughing when they saw Plaintiff.  He again said, so that Plaintiff could hear him, that he ran this place, referring to Northview.  Mr. Guthrie's conduct intimidated Plaintiff.

20. About a week later on October 21, 2015, Northview Human Resources employee asked Mr. Guthrie if he wanted to suspend Plaintiff for an alleged attendance violation.  Mr. Guthrie responded, "No.  Fire her ass."  Northview then terminated Plaintiff's employment.

21. Defendant Northview, by its actions and failure to act, including but not limited to the conduct described above, has discriminated against Plaintiff on account of her sex in violation of the Title VII of the Civil Rights Act of 1964, as amended, and has retaliated against Plaintiff on account of her exercising her protected rights in violation of the Title VII of the Civil Rights Act of 1964, as amended.

22. As a result of Defendant Northview's actions and failures to act described herein, Plaintiff has lost income and benefits of employment and has incurred and will continue to incur attorney's fees, costs and expenses of suit.

23. As a result of Defendant Northview's actions and failures to act described herein, Plaintiff has suffered garden variety emotional pain, humiliation, inconvenience, mental anguish and loss of enjoyment of life.

24. Defendant Northview's conduct was outrageous because of its evil motive or reckless indifference to the rights of Plaintiff and as such, warrants an award of punitive damages in such sum as will serve to punish Defendant Northview and to deter it and others from like conduct.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor against

Defendant Northview for compensatory and punitive damages, prejudgment interest, as well as for appropriate equitable, declaratory and injunctive relief, attorneys' fees and costs and for such other relief as may be just and proper under the circumstances.

         Respectfully submitted,

         SEDEY HARPER WESTHOFF, P.C.

         */s/ Jessica M. Scales*

         _____
         Jessica M. Scales, #64136MO
         2711 Clifton Avenue
         St. Louis, MO 63139
         314-773-3566
         314-773-3615 (fax)
         jscales@sedeyharper.com